Okay, our next appeal is 22-1373, Yita LLC v. MacNeil IP LLC. Mr. Walters, whenever you're ready. May it please the court, this is a consolidated appeal with two primary issues. You have the issue in the 1139 IPR dealing with secondary considerations. There's the issue in the 1142 IPR dealing with some evidence that wasn't considered on the reply. I'll address the issue in the 1139 appeal first. That was an IPR where the board found all elements of the claims of the 186 patent taught by the prior art, a motivation that combined the prior art, and a reasonable expectation of success. None of those findings are challenged with the cross appeal and that's why we asked for a reversal in this case because the board erred in applying a presumption of nexus between the claims of the 186 patent and the WeatherTech floor trays. The WeatherTech floor trays, the evidence was that they conformed within 1 16th of an inch for all four sidewalls. The claims of the 186 patent on the other hand, only claim one requires any level of conformance. It says closely conforming and only for two of the four sidewalls. So the WeatherTech floor trays vastly exceeded the scope of the claim and for that reason they were not coextensive with the claims of the 186 patent and a presumption of nexus in this case was improper. We think Fox Factory is directly on point like the greater than 80% gap filling feature in that case. Coextensiveness, that's a fact finding, right? That's right, your honor, but it has to be supported by substantial evidence and there is no substantial evidence in this case to reach a conclusion that the WeatherTech floor trays are coextensive with closely conforming for two of the four sidewalls. How perfect does the fit have to be? How perfect does the fit have to be? Yeah, yeah, when you're looking at a nexus and you're trying to see if the claims are coextensive, so I'm not talking about the fit of the product, but the fit of the claim with the, how perfect does that fit have to be in order to satisfy nexus? Because there is a fit here, it's just a little loose. Right, well, so Fox Factory does address this issue, it's a spectrum. So on the one hand, you have perfect coextensiveness where the product lines up exactly with everything that's in the claim and on the other hand, you have merely a component of the machine or process that's the subject of the secondary considerations and what we have in this case is we just have two of the four sidewalls that are closely conforming. So just two of the four sidewalls have any requirement. I'm sorry, two of the four sidewalls closely conforming, that's residing in the claim or is that the product? That's the product, Your Honor. So the evidence was the biggest reason, and this is from their argument, that the biggest reason why these floor trays were successful, why they satisfied the long-felt need, is because they fit better than any other floor tray that was offered by a competitor. Just a minute. Sure. You're saying, I just want to make sure I understand, the claim recites two of the four walls have to be closely conforming and your point is that the product is successful because all four sides are within 1 16th inch. Is that right? That is correct, Your Honor. And so the products exceed the scope of the claim and so for that reason, it's a separate invention. I mean, we have a separate patent here that claims a minimum level of conformance and that's the 834 patent. The level of conformance that was achieved by the WeatherTech floor trays is twice as much, twice as close as what is claimed as the minimum level of conformance in a separate patent. What you have in the 186 patent is you have just two of the four sidewalls have to be closely conforming and that was a term that was interpreted by the board to merely require some close spatial relationship. So I think if you look at Fox Factory, McNeil or WeatherTech, they were in the best position to put on direct evidence that, oh, you know, as long as you have two of the four sidewalls, you know, that would solve the problem in the prior art or that would create this commercial success. But instead, the evidence is all directed to four sidewalls fitting within 1 16th of an inch. I assume for the moment that as a fact finding matter, we look at the claim as a whole and of course we look at the individual elements, but we conclude that we can't really reverse the co-extensiveness finding because the WeatherTech products really are very, very close to what's been recited in the claim. So then let's get to your next question, which is to what extent have you rebutted the presumption? Right, Your Honor. So making that assumption, there was inconsistent treatment between the two boards' decision on this particular point. If you look at the 1142 IPR at the appendix 138 to 139, claims 13 through 15 of the 834 patent were found unpatentable and they couldn't be saved by secondary considerations. The argument was that the integration of baffles was part of the prior art. And so the board found in the 1142 IPR at appendix 138 to 139 that industry praise of the integrated baffles was insufficient to save those claims because that was part of the prior art. But in the 1139 IPR at appendix sites 74 to 75, closely conforming floor trays, even though they were found in the prior art, that analysis was treated differently. The board discounted that analysis and they said, well, because it wasn't well-known, close conforming wasn't well-known in the prior art, we are going to find secondary considerations. So it's your view that well-known is legal error? We do. Our case law only says that it has to be in the prior art. Here the board specifically found that rape taught that element. That's correct, Your Honor. And so that is our position. What about WBIP? That's the opinion they cite on that page that you're referring to. Right. WBIP does say that in circumstances where the objective criteria of non-obviousness, where that is linked to that claim as a whole, where it's shown that the claim as a whole is the reason for the commercial success or industry praise or what have you, that in fact you can't just look at whether one individual prior art element is in the prior art. Right? One individual claim element is in the prior art. How do you respond to that? How does that factor in this case? Thank you, Your Honor. So that case is distinguishable. In WBIP, first of all, there was no dispute that the presumption, application of the presumption was never challenged in WBIP. So that's one point of distinction. But on this aspect that, and it was also agreed in WBIP, that we're starting from an allegedly novel combination of prior art elements. And the evidence that was submitted to the board was that closely conforming was novel. It wasn't something. It was alleged by McNeil that it wasn't something in the prior art, that it was a novel thing. And so there was no attempt below to draw a connection between the combination of elements and the evidence of secondary consideration. So there was no, and in fact the board. What does the evidence of secondary consideration show as to what is the reason for why they're commercially successful or what the industry praise was directed to? So the board specifically found that the arguments, the evidence of secondary considerations was tied to the fit of the floor tray. And I'm going to get you an appendix citation for that. That's appendix 139 from the final written decision in the 1142. With respect to the claims 13 through 15, the board said we find that the industry praise cited by Mr. Sherman. Now it's important to note that the evidence on secondary considerations was identical for both IPRs, but this is in the final written decision of the 1142 IPR. We find that the industry praise cited by Mr. Sherman and the patent owner relates specifically to the close conformance of WeatherTech floor trays to the surface of the footwell. So there's that finding, again, unchallenged with the cross appeal. But it's also not something that really could be challenged because the way that this was litigated before the board was that these floor trays are successful primarily because of the way they fit. And the evidence also confirmed that all four tray walls fit that degree. In the patent owner response for industry praise, there is a section, a brief section that talks about how the industry participants have praised WeatherTech's floor trays for features described and claimed in the 186 patent, including closeness of fit, the bath bowl, reservoir, and panel. So at least for industry praise, it seems like they were relying on a little bit more than just good fit as a basis for that secondary consideration evidence. And so in my memory of that part of the record, Your Honor, is that a lot of those things come straight from the patent specification about statements about it wasn't necessarily we're going to put on a case to show that there is this industry praise because of this. And there are also other problems with their case for industry praise. I mean, it was mostly retailer statements. It's not like there was an award from an industry competitor or something like that. We have what has been described in other cases by this court as very weak evidence of secondary considerations. What about Mr. Granger? This is just on the commercial success. Mr. Granger, did he talk about something other than commercial success? Wasn't he the main expert? He provided the main evidence of commercial success. He did. Mr. Granger is just the one. What did he tie the commercial success to in his declaration? Right. He tied the commercial success to the WeatherTech floor trays, which he said in his declaration, the vast majority of which he says in some places, 95 percent of which, 49 out of 50 in their test runs, all four sidewalls conform to within one-sixteenth of an inch. So that was his evidence. What did he attribute? I think I know the answer, but what did he attribute the commercial success to? Did he attribute it to many features of the WeatherTech floor trays or a particular feature? So I believe his testimony was the biggest reason, and I think that's a quote, the biggest reason. 89056. Yeah, yeah. Paragraph 34. Right. So that's the biggest reason. So that's what we have. And before I get into my rebuttal time, I'd like to really briefly touch on the 1142 issue if I may. So, Your Honor, the argument was, or the finding from the Board, which we believe is clearly erroneous. Abuse of discretion. Sorry, abuse of discretion, but also a clear error in the—well, sorry. Abuse of discretion in what they found. So the finding was that the argument regarding routine optimization wasn't made in the petition, but from page appendix site 14237, let me just read you the brief argument here on that page. Quote, additionally, given the relatively low mold cost for thermoforming molds, a POSA would have been able to make molds for different vehicle interiors or different areas of the vehicle interior and adjust the mold-making process to achieve even greater conformity with the vehicle interior. So that is an argument for routine optimization made in the petition. Is that in the reasonable expectation success section? It is, but the reason it's there, Your Honor, is because we disclosed in RAB, and the Board found that RAB, regardless of whose translation you look at, touched the sidewalk. So you've got zero in that range that's claimed. The claim claims one-eighth to zero, basically, of conformance, and so we disclosed an example in RAB of zero conformance, and the argument made in the petition was that one of ordinary skill in the art would have been able to look at available technologies to make whatever kind of level of conformance you want, and that's exactly the kind of argument that's made here in the petition. Why is it unfair at the Board to look at page 14230 and 14229 and read that as understanding the petition asserts that RAB discloses or suggests the claimed element, and there's nothing else that needs to be done? There's no optimization or obviousness argument with respect to whether RAB teaches this element? Because, Your Honor, the argument was never made for RAB in isolation, and this is something that they do in their red brief, and we never argued RAB by itself. We argued RAB in New York. You mean RAB by itself teaches, what, the full claim or teaches its claim element? It teaches— Because I do think you argued that read RAB by itself teaches its claim element. We didn't, Your Honor, and let me say that what we did argue is that it teaches an example of falling within the range. The claim element, again, is a range. It's one-eighth to zero. RAB, we say it talked about perfect conformance. Now, that was challenged with a new translation, and so what we did in reply is we said it doesn't matter whose translation you look at. RAB discloses an example of something falling in that range. Now, one of ordinary skill in the art would know how to make whatever kind of conformance you want within that range. Well, but it says right here RAB discloses or at least suggests having at least 90 percent of the one-third of the outer surface of the trade's walls and goes through the rest of the claim limitation that we're talking about. How am I supposed to understand that that means that you're arguing that RAB, you know, that it would have been obvious to modify RAB to meet the claim limitation if you're already saying that RAB does meet the claim limitation? So our argument here in this page of the petition at 14230 says discloses or at least suggests. So I think there was a recognition that RAB didn't say one-eighth of an inch to zero. It talked about perfect conformance. Then that was challenged in the patent owner's response. So this is very similar to the Erickson case where a different claim construction was then proffered at the stage of the patent owner's response, and in the reply there was an opportunity then to expand arguments made in the petition, which is all that we did on reply. Okay. I think we have your argument. You're out of time, but we'll give you a couple minutes for rebuttal. Thank you, Your Honor. Mr. Will? Willie, Your Honor. Willie. Okay. Please, the Court, Your Honor. Yes. Okay. Thank you. The patent trial and appeal board properly found that McNeil's objective evidence was, and I quote, compelling evidence of non-obviousness, unquote. That compelling evidence included evidence of commercial success, a long-felt need, and industry praise. What does our case law say if all of your compelling evidence is directed to a claim element that was known in the prior art? So I would say the case law is mixed on that. What does Ornco and Ethicom say about this particular issue? That's not what the court, that's not what the PTAB found here. The PTAB did not find that the evidence was directed to an element in the prior art. It found that the evidence was directed to the claim as a whole. Its analysis . . . Where does your evidence say that it is directed to the claim as a whole? Even if they found that, I think what they said was it has to be well-known. But even if they did find that it's directed to the claim as a whole, I went through your evidence, and it seems to be directed to one claim element, which is the post-conformance claim element. So we've got an appendix. I would like for you to walk through for me, if you can, where the evidence is in the record so I can understand. Okay. So, Appendix 73, the board's analysis. What . . . But I want you to look at the actual evidence that was presented, not the board's analysis. Of course we had the board's analysis. But I want to make sure . . . This is your opportunity to show me that I'm wrong in understanding that your evidence is directed to close conformance. So, if you can, I'd like you to go to the appendix and show me where I'm going to find that your evidence of secondary considerations was tied to the claim as a whole. Okay. Your Honor, Judge Chen cited Mr. Granger's declaration. And what Mr. Granger talks about in his declaration is the fit-of-the-floor trade. He does talk about the close conformance limitations being met. But there were claim charts provided to show how all of the limitations were met. And the board recognized and cited Mr. Granger's claim charts as well as his analysis of the claim as a whole. The . . . It is important . . . I agree. So the analysis of the claim as a whole was for purposes of establishing a nexus, right? Yes. But it is the claim as a whole that gives you . . . Let me explain how the claim as a whole gives you a trade that fits better than what the competition has. Because that's what the board said repeatedly at Appendix 75, Appendix 77, Appendix 73, Appendix 78, and 79. It kept talking about the close conforming trade. If you simply had two panels of something that closely conformed, that doesn't give you anything. This is a . . . The claim only requires the trade to have two walls, and it requires . . . To be closely conforming. It requires the central panel. Now, it only requires two panels because that's all you need in some cases. And that's a separate argument I need to address, but I want to answer Judge Stoll's question, if I may, which is this claim is a very elegantly drafted claim. It requires a central panel, which substantially conforms. And one of the things that's important to understand about the walls is that the walls are not only the panels that closely conform. There are curved transitions between the central panel and the panels, the side panels. Those side panels are also required to be joined by a curved transition. If you didn't have that entire structure, you wouldn't get the good fit that you get. The patent talks about how the footwell has complex curves in it often and is concave. That central panel in the floor that substantially conforms to the floor is following that. And so it is the combination of all of these that make the floor fit. I think I'm understanding your point now. Paragraph 84 of Mr. Granger's declaration, which was referenced earlier, says, The biggest reason for the WeatherTech floor liners' commercial success, based on the feedback received over the years, is that they fit the footwells for which they were custom designed to a degree not achieved by competitors. That is correct, Your Honor. So you're saying that's from element A, the central panel substantially conforming, combined with other things? It's the combination as a whole, Your Honor. It's the central panel substantially conforming. Curved transitions to the other panels. And the curved transitions also relate to another thing that Mr. Granger talks about, which is how they have made a couple thousand of these. Before you go any further, part of the prima facie case of obviousness is that all of these claim elements and their claims were known in the arts, right? Well, we disagree with that. We think there's an alternative basis to affirm. Let's assume for the moment substantial evidence supports those findings. Let's also read Ormco and Ethicon for what they say. If the basis for commercial success or other secondary consideration evidence is things that were known in the prior art, then your evidence of secondary consideration is essentially immaterial and irrelevant. If we put those two things together, that's the trouble I'm having with trying to understand how we can credit all of this secondary evidence the way that the Board did, because the Board seemed to misunderstand cases like Ormco and Ethicon by when the Board said, well, it wasn't proven that the close fit element was well known in the art. But that's not the standard. The standard is simply, was it known in the art? If it's known in the art, and that's truly the merits of your claim convention, then you can't really use that as a benefit for secondary considerations. So if objective evidence is often considered when there is a prime capacious case of obviousness, which by definition that means all of the elements have been found in the prior art. If you look at the court's decision, the PTAB's decision, it did not base its findings on one claim element. That's my point, Your Honor. Well, in page 77, at the very end of the commercial success, it says, we find the evidence of commercial success is due to the close conforming vehicle portrait. Long felt need, 78, the evidence of long felt need is due to the close conforming vehicle portrait. 79, the evidence of industry praise is due to the close conforming vehicle portrait. So everything hinges on the close conforming vehicle portrait. That's known in the art. They said, no, it's not known in the art, Your Honor. The tray as a whole that fits like this is not known in the art. What they said, you'll notice in each of those passages that you quoted, is they said it's due to a close conforming vehicle floor tray. It doesn't say it was due to just having two panels closely conformed. If all you had was two panels that closely conformed, you would not have a good fitting tray. It is the claim as a whole, which is in their commercial success analysis, they cite the WVIP versus Kohler case, and they say it's based upon the claim as a whole that they are deciding this. Well, why isn't it based on a central panel substantially conforming combined with the first and second panels that are closely conforming? That's exactly right, Your Honor. It is all of those things together. Is there anything else in the claim, or is it just those things together? The claim requires the two panels that are closely conforming. It requires those to be joined together by a curved transition, and so that means you have those two joined together. Did the board not find those elements in the prior art? It will always be the case when you're addressing objective evidence that the elements will be found in the prior art somewhere. Not necessarily. Sometimes it's not in the prior art, but there's a conclusion that a skilled artisan would modify the art in order to create that new element. The board did not find all of those elements in a single reference. What was the secondary reference relied on for by the board? There were two secondary references, and they were relied upon for thermoforming, curved transitions, and things like that. So, Judge Chen, you raised the issue of the four walls argument, so I have five responses to the four walls versus two walls argument. So the first argument is this argument was forfeited. This argument does not appear in the opening brief. There's a brief reference to it saying, well, four walls touch, two walls don't. But there's nothing in their opening brief, page 32 is where that reference is, there's nothing in their opening brief saying that that has an impact on the nexus or explaining how it has an impact on nexus. There was no evidence. Second, there was no evidence presented in the district court that having two walls conform versus having four walls conform makes any difference to the fit of the tray. Third, they overstate the record, and they overstated the record today. They said Granger said all four walls had to touch. There is nothing in Granger's testimony that says all four walls have to touch. If you look at all the citations in their reply brief for that proposition. This argument that you've referred to, this is the nexus argument, presumption of nexus, right? Yes. Because the page 32 you're referring to is talking about Fox Factory, that's all about presumption of nexus. Correct. So, I mean, in your view, all you do in that circumstance, right, you've got to look at the fit between the claim and the commercial product, right? Exactly, Your Honor. And so you agree that there is a difference between the commercial product and the claim. The question is whether that difference is significant enough to make it so they're not, the nexus isn't satisfied, right? That's correct. And what this court has said in Fox Factory and in Quanergy is that that is a factual determination for the finder of fact to make based upon the record before them. Where are we on this spectrum? And without any evidence that it matters whether four walls versus two walls are within a sixteenth of an inch, there is substantial evidence for the PTAB's conclusion. Now, there's a very good reason why the claim is why it is. And if you think about every car you've ever been in, because it may not be enough to think of your own car because they vary, particularly at the back of the seat. Sometimes there is no footwell at the back of the seat. Sometimes the seat is flush with the floor, or sometimes there's a seat bracket that's flush with the floor, so you wouldn't have a wall there sometimes. Or you might have something that's really just a curved transition because you can't get high enough to have a panel. Depends upon the vehicle. It depends upon how the vehicle is made. Depends upon where the seat sits. And, you know, the seat slides back and forth, so that needs to be taken into account. So there's a good reason why the claim is why it is. What there is not in this record is any evidence that it matters to the industry praise, to the commercial success, to the long-felt need, to the fit of the tray, whether two walls are within a certain tolerance or whether four walls are within a certain tolerance. For that reason, the court has ample evidence to affirm there was substantial evidence for the PTAB's conclusion. Sorry, one more point on the waiver argument. For example, on page four of their reply brief, they say that achieving one-sixteenth of an inch tolerance on all four sidewalls, no reasonable fact finder could conclude that achieving that tolerance on all four sidewalls was anything but critical to the alleged success of the floor trays. That's new in the reply brief. There's no argument about four walls versus two walls being critical. On page 12, they refer to some deep-ended claims. Those were never referred to in the opening brief. So consequently, you're not going to see anything in our brief responding to this because it's just a passing comment. Do you have any response you want to make here at argument? Well, I think I've made the responses, Your Honor. There's a good reason why the claim is the way it is because you don't need four walls to have a good-fitting tray when you have this claim structure as a whole, which includes a substantially conforming central panel, curved transitions to sidewalls, which are themselves joined by a curved transition, which essentially means you have two walls that form a corner. And the board found that Rob teaches all that, right? No, the board did not find that Rob teaches all that. So then, therefore, there's a missing limitation in the Prima Fasci case? Rob does not teach the curved transitions. We contend that Rob does not teach close conformance. We don't think there's substantial evidence for that conclusion. Which reference does the board rely upon and the petitioner rely upon for the smooth transition? I believe they relied on the thermoforming reference, so there's a thermoforming treatise, which suggests that when you thermoform things that you may... for the closely conforming central panel, they found that Rob teaches those things. That's correct. Okay. Just a couple brief points, Your Honor. I want to go back to Mr. Granger's declaration at Appendix Site 9056. Paragraph 84, he says, the biggest reason for WeatherTech Floor Liner's commercial success based on feedback received over the years is that they fit the footwells for which they were custom designed. And the important part here is, to a degree, not achieved by competitors. And then he goes on at Paragraph 85, the 1 16th inch tolerance of our floor tray manufacturing process ensures such closeness of fit. And to get an idea of what he's talking about when he says the 1 16th inch, you have to go to his other declaration in the same IPR. It's at Appendix Site 11306. And this gets to this argument that's being made about, well, it was really a combination of the central panel and the floor panels, and that was the reason for the commercial success. But here you have Mr. Granger saying, the 1 16th inch conformance is the reason. That ensures the closeness of fit. Paragraph 70, Appendix Site 11306, note that in order to pass the floor panel or the central panel has to be within 1 8th of an inch. So it can't be talking about the central panel. That only has to go to within 1 8th of an inch. And then Paragraph 71, the sidewalls, we're talking about ones with four sidewalls. If there is a version that has three sidewalls, that certainly encompasses all the sidewalls. The sidewalls or side panels of the tray must conform more tightly to the sidewalls, so more tightly than the central panel. Central panel is only 1 8th of an inch. Side panels, 1 16th of an inch. Again, that's the thing that ensures the closeness of fit. Those have to be more tightly to the sidewalls of the vehicle footwell. The external surfaces of the side panels should be within 1 16th of an inch of the vehicle footwell. So it absolutely is the case, Your Honor, that their evidence that they put on below was that commercial success, long-failed need, industry prairie was all the result of this unclaimed degree of conformance. And he says, well, there's no evidence about whether two walls make a difference over four walls. Well, that was their burden to try and come up with some kind of evidence for that because the claims are just not coextensive with the products. Unless there's a question, Your Honor, I'm out of time. Thank you. Thanks. Case is submitted.